# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DERRICK LIPSEY,             Plaintiff,         ) ) ) | |
| v.                             ) | Civ. Act. No. 06-0423(RWR) |
| DEPARTMENT OF JUSTICE, EXECUTIVE OFFICE FOR U.S. ATTORNEYS         ) ) ) ) | |
|            Defendant.     ) ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, the Executive Office For United States Attorneys

(EOUSA), a component of the Department of Justice, respectfully moves for summary judgment.

As grounds for this motion, defendant asserts that there are no genuine issues of material fact

and that it is entitled to judgment as a matter of law.[1]  A memorandum of points and authorities,

---

[1]  Plaintiff should take notice that any factual assertions contained in the affidavits and other attachments in support of defendant's motion will be accepted by the Court as true unless the plaintiff submits his own affidavits or other documentary evidence contradicting the assertions in the defendant's attachments. See Neal v. Kelly, 963 F.2d 453, 457 (D.C. Cir. 1992), Local Civil Rule 7(h) and Fed. R. Civ. P. 56(e), which provides as follows:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.  Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.  The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the

a statement of genuine issues of material fact not in dispute, and a proposed order granting the

relief sought are attached hereto.

Respectfully submitted,

/s/

_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/

_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

_____          /s/

_____
HEATHER D. GRAHAM-OLIVER
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C.  20530
(202) 305-1334

_____

adverse party does not so respond, summary judgment, if
appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

2

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DERRICK LIPSEY,** ) | |
|         **Plaintiff,** ) | |
| ) | |
|   **v.** ) | **Civ. Act. No. 06-0423 (RWR)** |
| ) | |
| **DEPARTMENT OF JUSTICE,** ) | |
| **EXECUTIVE OFFICE FOR** ) | |
| **U.S. ATTORNEYS** ) | |
| ) | |
|        **Defendant.** ) | |
| ) | |

**STATEMENT OF MATERIAL FACTS AS TO WHICH**
**THERE IS NO GENUINE ISSUE**

Pursuant to Local Rule 7(h), the defendant hereby submits the following material facts as to which there is no genuine dispute:

CHRONOLOGY-REQUEST NUMBER 02-1901

1. By letter dated June 17, 2002, Mr. Lipsey requested all records pertaining to himself and his criminal case in the United States Attorneys Office (USAO) for the Southern District of Ohio (OHS). Declaration of John W. Kornmeier, (Kornmeier Decl.) ¶ 4.

2. By letter dated September 27, 2004, EOUSA responded to Mr. Lipsey's request, releasing 118 pages in full and 29 pages in part and withholding 30 pages in full; Kornmeier Decl. ¶ 5.

3. In October of 2004, Mr. Lipsey appealed the decision of the EOUSA. On August 1, 2005, the U.S. Department of Justice, responded to Mr. Lipsey's appeal and released an additional three pages in full. See Complaint p. 2, ¶ 5 and Kornmeier Decl. ¶ 5.

4. By letter dated September 26, 2006, EOUSA made a supplemental release of

documents to Mr. Lipsey, releasing two pages in full and five pages in part.  Kornmeier Decl. ¶ 6.

5.  By letter dated September 29, 2006, EOUSA made another supplemental release of documents to Mr. Lipsey, releasing seven pages in full.  Kornmeier Decl. ¶ 6, Exhibit C.1.

CHRONOLOGY-REQUEST NUMBER 05-247

6.  By letter dated October 6, 2004, Mr. Lipsey requested a particular court order and the grand jury materials in his criminal case.  Kornmeier Decl. ¶ 7.

7.  By letter dated March 28, 2005, EOUSA responded to Mr. Lipsey's request, releasing ten pages in full and withholding all grand jury materials in full.  Kornmeier Decl. ¶ 8.

SEARCH

8.  Upon receipt of Mr. Lipsey's requests EOUSA sent them to the USAO/OHS to search for his records.  Kornmeier Decl. ¶ 9.

Respectfully submitted,

/s/
_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/
_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

2

_____ /s/

_____

HEATHER D. GRAHAM-OLIVER
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C.  20530
(202) 305-1334

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DERRICK LIPSEY,** ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civ. Act. No. 06-0423 (RWR)** |
| ) | |
| **DEPARTMENT OF JUSTICE,** ) | |
| **EXECUTIVE OFFICE FOR** ) | |
| **U.S. ATTORNEYS** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

In this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 and the

Privacy Act ("PA"), 5 U.S.C. § 552a, plaintiff alleges that EOUSA improperly redacted and

withheld information and documents to which he is legally entitled.  However, in response to his

FOIA requests, EOUSA conducted a careful and thorough search for responsive records and

determined which documents were to be released in their entirety, or otherwise withheld in

whole or in part.  EOUSA has submitted the Declaration of Nancy Vincent ( Vincent Decl.),

attached to the Kornmeier Decl., as Exhibit F, and incorporated by reference herein, evidencing

that EOUSA's search was adequate.  Both the Kornmeier Declaration and the Vaughn index,

attached as Exhibit G, show that EOUSA's withholding and redacting of documents, pursuant to

exemptions (b)2, (b) 3, (b)5 and (b)7(c) is substantiated by the applicable law.  Thus, there is no

genuine issue as to any material fact and the information plaintiff seeks is exempt from

disclosure under applicable FOIA exemptions.  EOUSA is therefore, entitled to summary

judgment in this action as a matter of law.

# I.  FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural background are fully contained in the statement of material

facts to which there is no genuine issue, attached hereto and incorporated herein.

## II.  ARGUMENT

### A.    SUMMARY JUDGMENT STANDARD

In a FOIA/PA action, summary judgment is appropriate when, as here, the pleadings,

together with the declarations, demonstrate that there is no genuine issue of material fact in

dispute and that the moving party is entitled to judgment as a matter of law. Fed. R Civ. P. 56(c);

Weisberg v. Department of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980). The Court exercises de

novo review over FOIA matters, and the burden is on the agency to justify all non-disclosures. 5

U.S.C. § 552(a)(4)(B); Department of Justice v. Reporters Comm. For Freedom of the Press, 489

U.S. 749, 755 (1989). In carrying its burden, agencies may rely on declarations of government

officials which courts normally accord a presumption of expertise in FOIA as long as the

declarations are sufficiently clear and detailed and submitted in good faith.  Oglesby v.

Department of Army, 920 F.2d 57, 68 (D.C. Cir. 1990); see Hayden v. National Security

Agency, 608 F.2d 1381, 1387 (D.C. Cir. 1979). Once the Court determines that the declarations

are sufficient, it need not inquire further.  Students Against Genocide v. Department of State,

257 F.3d 828, 833 (D.C. Cir. 2001) (In FOIA cases, an agency "is entitled to summary judgment

if no material facts are in dispute and if it demonstrates 'that each document that falls within the

class requested either has been produced . . . or is wholly exempt from the Act's inspection

requirements'.") (quoting Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978)); see also, Burnes

v. CIA, No. 05-242 , U.S. Dist LEXIS 20114 at *2-7 (D.D.C. Sept. 14, 2005) (a copy of the

opinion is attached hereto).  A court "may award summary judgment [in a FOIA case] solely on the basis of information provided by the department or agency affidavits or declarations."  Burns v. CIA, No. 05-242, 2005 U.S. Dist LEXIS 20114 (D.D.C. Sept. 14, 2005); see also, Hayden v. National Sec. Agency, 608 F.2d 1381, 1386-87 (D.C. Cir. 1979).

Regarding the adequacy of the search, to satisfy the requirements for summary judgment, all the agency need do is produce "an affidavit reciting facts which enable the District Court to satisfy itself that all appropriate files have been searched."  Church of Scientology v. IRS, 792 F.2d 146, 151 (D.C. Cir. 1986).  "[I]n the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by FOIA."  Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982).

Here, summary judgment should be entered in favor of EOUSA because the evidence shows that EOUSA conducted a reasonable and adequate search and any information that fell within the class of documents plaintiff requested was either produced or is exempt from disclosure under FOIA.  Students Against Genocide v. Department of State, 257 F.3d at 833. The declarations contain reasonable specificity of detail regarding the search and the reasons for the withholding, in whole or part, of the information not produced to plaintiff.  EOUSA's judgment regarding the production or withholding of documents here objectively survives the test of reasonableness, good faith, specificity, and plausibility.

**B.    THE VAUGHN INDICES**

In moving for summary judgment in a FOIA case, an agency must establish a proper basis for its withholding of responsive documents.  "In response to this special aspect of

summary judgment in the FOIA context, the agency regularly submits an affidavit . . . in support

of its motion for summary judgment against a FOIA Plaintiff." Judicial Watch v. U.S. Dept. of

Health and Human Services, 27 F. Supp. 2d 240, 242 (D.D.C. 1998). The declaration or

affidavit (singly or collectively) is often referred to as a Vaughn index, after the case of Vaughn

v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977, 94 S.Ct. 1564 (1974).

There is no set formula for a Vaughn index. "[I]t is well established that the critical elements of

the Vaughn index lie in its function, and not in its form." Kay v. FCC, 976 F.Supp. 23, 35

(D.D.C. 1997). "The materials provided by the agency may take any form so long as they give

the reviewing court a reasonable basis to evaluate the claim of privilege." Delaney, Midgail &

Young, Chartered v. IRS, 826 F.2d 124, 128 (D.C. Cir. 1987). See also Keys v. U.S. Dept. of

Justice, 830 F.2d 337, 349 (D.C. Cir. 1987); Hinton v. Dept. of Justice, 844 F.2d 126, 129 (3d

Cir. 1988).[1]

The Vaughn index serves a threefold purpose: (1) it identifies each document withheld;

(2) it states the statutory exemption claimed; and (3) it explains how disclosure would damage

the interests protected by the claimed exemption. See Citizens Commission on Human Rights v.

FDA, 45 F.3d 1325, 1326 (9th Cir. 1995). "Of course the explanation of the exemption claim and

the descriptions of withheld material need not be so detailed as to reveal that which the agency

wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as to

---

[1] "All that is required, and that is the least that is required, is that the requester and the trial judge be able to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure." Id. "The degree of specificity of itemization, justification, and correlation required in a particular case will, however, depend on the nature of the document at issue and the particular exemption asserted." Information Acquisition Corp. v. Dept. of Justice, 444 F.Supp. 458, 462 (D.D.C. 1978).

whether the material is actually exempt under FOIA."  <u>Founding Church of Scientology v. Bell</u>, 603 F.2d 945, 949 (D.C. Cir. 1979).

The purpose of a <u>Vaughn</u> index is "to permit adequate adversary testing of the agency's claimed right to an exemption."  <u>NTEU v. Customs</u>, 802 F.2d 525, 527 (D.C. Cir. 1986) (citing <u>Mead Data Central v. United States Dept. of the Air Force</u>, 566, F.2d 242, 251 (D.C. Cir. 1977), and <u>Vaughn v. Rosen</u>, 484 F.2d 820, 828 (D.C. Cir. 1973), <u>cert</u>. <u>denied</u>, 415 U.S. 977 (1974)).  Thus, the index must contain "an adequate description of the records" and "a plain statement of the exemptions relied upon to withhold each record".  <u>NTEU</u>, 802 F.2d at 527 n.9.  "The form of the <u>Vaughn</u> index is unimportant and affidavits providing similar information can suffice." <u>Spirko v. U.S. Postal Service</u>, 147 F.3d 992, 998 n.4 (D.C. Cir. 1998) (citing <u>Gallant v. NLRB</u>, 26 F.3d 168, 172-73 (D.C. Cir. 1994)).

In the instant case, EOUSA has submitted the declaration of John Kornmeier, who is sufficiently familiar with the handling of plaintiff's FOIA/PA request. See Kornmeier Decl. ¶ 3.  Mr. Kornmeier's  Declaration and the <u>Vaughn</u> index attached thereto as Exhibit G, properly identify the documents responsive to plaintiff's FOIA requests and set forth the justification for the exemptions claimed for the withholding of certain documents and information.  Accordingly, the Declaration and index submitted in support of this motion meet the requirements of <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973) and provide the Court with the requisite basis to grant defendants' motion for summary judgment.

## C.    EOUSA's Search Was Entirely Adequate

In FOIA cases, "the Court's inquiry regarding the adequacy of the search focuses on the search itself, not its results."  <u>See</u> <u>Burnes v. CIA</u>, 2005 U.S. Dist LEXIS 20114 at *2-7 (D.D.C.

Sept. 14, 2005), citing Weisberg v. United States Dep't of Justice, 240 U.S. App. D.C. 339, 745
F.2d 121, 126 (D.C. Cir. 1982). To fulfill an agency's obligations under FOIA, " 'the agency
must demonstrate that it has conducted a "search reasonably calculated to uncover all relevant
documents."' Steinberg v. U.S. Dept. of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994). But the
search need only be reasonable; it does not have to be exhaustive." Miller v. United States Dept.
of State, 779 F.2d 1378, 1383 (8th Cir. 1985). In other words, "[t]he question is not 'whether
there might exist any other documents, but rather whether the *search* for those documents was
adequate.'" Steinberg v. U.S. Dept. of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994) (emphasis in
original). Merely because an agency is unable to find a particular document a requestor believes
that it should have, does not render its search inadequate. Wilbur v. CIA, 355 F.3d 675, 678,
(D.C. Cir. 2004); Nation Magazine v. United States Customs Serv., 315 U.S. App. D.C. 177, 71
F.3d 885, 892 n. 7 (D.C. Cir. 1987).

Mr. Lipsey requested documents pertaining to himself and the criminal case handled in
the USAO for the Southern District of Ohio. Kornmeier Decl. ¶ 4. Here, as explained by Nancy
Vincent, the FOIA coordinator for the United States Attorney's Office for the Southern District
of Ohio (SDOH/OHS), EOUSA conducted a reasonable, diligent, and adequate search. Ms.
Vincent serves as liaison (FOIA Coordinator) to the FOIA and PA staff of the
EOUSA/Department of Justice. Her duties include the receipt of requests submitted under the
FOIA, whenever the records are identified as likely to be located in the Southern District of
Ohio. Vincent Decl. ¶ 1. Upon receipt of plaintiff's FOIA requests EOUSA sent them to the
SDOH to search for his records. Kornmeier Decl. ¶ 9.

Ms. Vincent searched for records pertaining to derrick Lipsey by inserting the name

Derrick Lipsey into the TALON (Tracking Assistance for the Legal Office Network) and LIONS (Legal Information Office Network System) computer databases. The computer case tracking systems, TALON and LIONS, were used to determine all possible locations of responsive files. The databases have fields for retrieval of information based on a defendant's name, USAO file jacket number, and district court case number. The computer search determined all possible record locations in the Criminal and/or Civil Divisions. Vincent Decl. ¶ 6a.

Request Number 02-1901

Plaintiff's June 2002 FOIA/PA request was assigned Request No, 02-1901 by EOUSA and sent to the SDOH. Vincent Decl. ¶ 5. The LIONS computer database yielded a result that closed criminal records existed under the name of Derrick Lipsey and that the criminal case had been assigned to Assistant United States Attorney Gary L. Spartis. Id., at 6b. The TALON computer database yielded seven pages relating to plaintiff's criminal payment history and those documents were forwarded to EOUSA and released to the plaintiff in full on September 29, 2006. Id., ¶ 16; Kornmeier Decl. ¶ 6.

Ms. Vincent personally spoke to Assistant United States Attorney Gary L. Spartis and his then secretary requesting the Derrick Lipsey files. Id., at 6c. Upon receipt of the records from Gary Spartis' secretary, they were all photocopied. Id., at 6d. She did not find any audiotapes or videotapes in Mr. Lipsey's file responsive to his June 2002 request. Id., at 6e. Pursuant to EOUSA procedure, the photocopied documents were forwarded to EOUSA. Id., at 7. EOUSA made the decision as to which documents to release to Mr. Lipsey. Id.

Request Number 05-247

On or about February 14, 2005, the plaintiff requested "a copy of the District Court's

7

Order denying [his] 1993 request to withdraw [his] guilty plea and a copy of [his] grand jury material." Id., at 11.  Mr. Lipsey's February 2005 FOIA/PA request was assigned Request No. 05-247 by the EOUSA and sent to the USAO/SDOH.  Id., at 12.  Upon receipt of the request, Ms. Vincent again inserted the name Derrick Lipsey into the LIONS (Legal Information Office Network System) computer database.  Id., at 13a.  The LIONS computer database yielded a result that closed criminal records existed under the name of Derrick Lipsey and that the criminal case had been assigned to Assistant United States Attorney Gary L. Spartis.  Id., at 13b.  Ms. Vincent sent an e-mail to Assistant United States Attorney Gary L. Spartis and his secretary requesting the Derrick Lipsey files.  Id., at 13c.  Upon receipt of the records from Gary Spartis' secretary, they were photocopied.  Id., at 13d.

Pursuant to EOUSA procedure, the Opinion and Order consisting of 10 pages, were forwarded to EOUSA along with a transmittal form.  Id., at 14.  The Opinion and Order was filed on July 6, 1993 in the United States District Court for the Southern District of Ohio in Case No. CR-2-92-119-7.  Id.  The transmittal form indicated that no grand jury material was being forwarded.  Id., at 13e.  This language was misinterpreted by EOUSA.  Kornmeier Decl. ¶ 8. Based on its interpretation of the USAO/OHS transmittal form stating that it was not forwarding grand jury material, EOUSA concluded that there was grand jury material and asserted Exemption (b)(3), FRCrP (6)(e) to withhold the materials.  Id., at note 2.  Upon subsequent inquiry, EOUSA determined that it had misunderstood and that the search by the USAO/OHS had yielded no grand jury material.  Id.  EOUSA never received any grand jury materials from USAO/OHS.  Id.

In sum, the undisputed evidence demonstrates that the search was reasonable and done in

good faith.  The SDOH files likely to have records responsive to plaintiff's request were

searched.  Because the Agency has set out detailed facts establishing that the search was

reasonable, summary judgment on this point should be granted in favor of EOUSA.

**D.    EOUSA Properly Invoked applicable FOIA Exemptions.**

As stated in Mr. Kornmeier's Declaration, EOUSA withheld documents in full or in part

pursuant to FOIA Exemptions (b)(2), (b)(3), (b)(5) and (b)(7)C as well as PA Exemption (j)(2).

As set out more fully below, EOUSA's assertion of these exemptions is justified under the law.

**Privacy Act Exemption**

Subsection (j)(2) of the Privacy Act allows an agency to promulgate regulations

exempting from mandatory disclosure:

> records maintained by an agency or component thereof which
> performs as its principal function any activity pertaining to the
> enforcement of criminal laws, including police efforts to prevent,
> control, or reduce crime or to apprehend criminals, and the
> activities of prosecutors, courts, correctional, probation, pardon, or
> parole authorities, and which consists of ...(B) information
> compiled for the purpose of a criminal investigation, including
> reports of informants and investigators, and associated with an
> identifiable individual; or (C) reports identifiable to an individual
> compiled at any stage of the process of enforcement of the criminal
> laws from arrest or indictment through release from supervision.

5 U.S.C. § 552a (j)(2).

EOUSA processes all requests made by individuals for records pertaining to

themselves under both the FOIA and PA in order to provide the requester with the maximum

disclosure authorized by the Acts.  Kornmeier Decl. at ¶ 10.  The Criminal Case Files

(Justice/USA-007) are part of the DOJ Privacy Act System of Records.  Id.  The Attorney

General has promulagated rules exempting these records from the PA's access provisions as

authorized by 5 U.S.C.§552a(j)(2), which appear at 28 CFR §16.81 9a)(4).  Id.  The Attorney

General has exempted Criminal Case Files from the Privacy Act's access provisions because

they are records of an agency which performs as its principal function activity pertaining to the

enforcement of criminal laws.  Id.  Subsection (j)(2) exempts from mandatory disclosure all

records maintained by an agency or component performing as its principal function any activity

pertaining to the enforcement of criminal laws.  Id.  As the entire case file pertained to a criminal

prosecution, it was necessarily compiled  for law enforcement purposes.  Therefore, EOUSA

determined that the responsive records withheld were not disclosable under the PA.

Accordingly, the records were then reviewed under the provisions of the FOIA.  Id.

### Exemption (b)(2)

Title 5, United States Code, Section 552 (b)(2) (hereinafter Exemption 2) exempts from

mandatory disclosure records "related solely to the internal personnel rules and practices of an

agency."  5 U.S.C. § 552(b)(2).  Exemption 2 applies primarily to two types of materials: (1)

internal agency matters so routine or trivial that they could not be "subject to ... a genuine and

significant public interest;" and (2) internal agency matters of some public interest "where

disclosure may risk circumvention" of statutes or agency regulations.  Department of Air Force

v. Rose, 425 U.S. 352, 369-70 (1976); National Treasury Employees Union v. United States

Custom Service, 802 F.2d 525, 528-30 (D.C. Cir. 1986); Crooker v. Bureau of Alcohol, Tobacco

and Firearms, 670 F.2d 1051, 1073-74 (D.C. Cir. 1981).  Depending upon the nature of the

information, documents will fall within either the "high (b)(2) category" or the "low (b)(2)

category."

"High (b)(2)" exempts from mandatory disclosure documents relating to more

substantive internal matters. See Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992).

Withholding is permitted in this category to the extent that disclosure would reveal techniques

and procedures for law enforcement investigations or prosecutions, id., would disclose

guidelines for law enforcement investigations, or would risk circumvention of an agency statute

or impede the effectiveness of an agency's law enforcement activities. See Crooker v. Bureau of

Alcohol, Tobacco & Firearms, 670 F.2d 1051 (D.C. Cir. 1981) (en banc); Hardy v. ATF, 631

F.2d 653, 656 (9th Cir. 1980).

"Low" (b)(2) information refers to internal procedures and practices of an agency, where

disclosure would constitute an administrative burden unjustified by any genuine and significant

public benefit. Martin v. Lauer, 686 F.2d 24, 34 (D.C. Cir. 1982). "Low" (b)(2) information can

be protected only if the information qualifies as a personnel rule or internal practice of an agency

or is sufficiently related to such a rule or practice. See Schwaner v. Department of the Air Force,

898 F.2d 793, 795 (D.C. Cir. 1990). Thus, trivial administrative data, such as file numbers, mail

routing stamps, initials, data processing notations, brief references to previous communications,

and other like administrative markings are exempt from disclosure. The notion behind this

reasoning is that administrative agencies should not be burdened by responding to requests for

trivial information unlikely to be the subject of public interest. Martin v. Lauer, 686 F.2d at 34.

EOUSA applied this exemption to withhold a Federal Express account number which is

described in the Vaughn index.[2]

---

[2] The Vaughn index is attached as Exhibit G to the Kornmeier Declaration. See page 9,
Document 13.

**Exemption (b)(3)**

Title 5 U.S.C. § 552(b)(3) allows for the deletion of information "specifically exempted from disclosure by statute (other than section 552(b) of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld."[3]

EOUSA applied exemption (b)(3) to withhold a Pretrial Services Report.  Id.  Under 18 U.S.C.  3153, "Organization and Administration of Pretrial Services", information obtained in the course of performing pretrial functions shall be used only for the purposes of bail determination and is otherwise strictly confidential.  Accordingly, EOUSA withheld this report.[4] Id.

In request no. 05-247, the plaintiff requested, inter alia, grand jury materials.   On March 28, 2005, EOUSA sent a letter to the plaintiff stating that it was applying exemption (b)(3) and Fed. R. Civ. P. 6(e) to withhold grand jury material.  Kornmeier Declaration ¶ 8 and Exh. E.[5] Based on its interpretation of the USAO/OHS transmittal form stating that it was not forwarding grand jury material, EOUSA concluded that there was grand jury material and asserted

---

[3] "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage." Goland v. CIA, 607 F.2d 339, 350 (D.C. Cir. 1978), cert. denied, 445 U.S. 927 (1980).

[4] This document is also withheld under Exemption (b)(7)(C).

[5] The representations made by EOUSA in the March 28, 2005, letter about grand jury materials were in error.  Kornmeier Decl.¶ 8, and Exh. E.  In the instant case, EOUSA never received any grand jury materials from SDOH.  Id. at ¶ 8.  While grand jury materials may at one time have existed, none were found at the time of the search.  Vincent Decl. ¶ 13e; Kornmeier Decl. ¶ 8 .

Exemption (b)(3), FRCrP (6)(e) to withhold the materials. Upon subsequent inquiry, EOUSA determined that it had misunderstood and that the search by the USAO/OHS had yielded no grand jury material. Id.

### Exemption (b)(5)

Title 5, United States Code, § 552 (b)(5) ("Exemption 5") protects "inter -agency or intra-agency memorandums or letters which would not be available by law to a party in litigation with the agency." 5 U.S.C. § 552(b)(5). In other words, this exemption protects documents normally privileged in the civil discovery context. FTC v. Grolier Inc., 462 U.S. 19, 26 (1983); NLRB v. Sears Roebuck & Co., 421 U.S. 132, 149 (1975). This section of the FOIA incorporates the attorney-client privilege, the attorney work-product doctrine and the executive "deliberative process privilege that protects candid internal discussions of legal or policy matters." Maricopa Audubon Soc'y v. U.S. Forrest Serv., 108 F3. 1082, 1084 n. 1 (9th Cir. 19997). EOUSA applied Exemption 5 to withhold information falling within the parameters of the attorney work product privilege, and the deliberative process privilege.

The attorney work-product privilege protects "the files and the mental impressions of an attorney... reflected, of course, in interviews, statements, memoranda, correspondence, briefs ... and countless other tangible and intangible ways prepared in anticipation of litigation," particularly those documents which set forth the attorney's theory of the case and litigation strategy. A. Michael's Piano, Inc. v. Federal Trade Comm'n, 18 F.3d 138, 146 (2d Cir. 1994) (citing Hickman v. Taylor, 329 U.S. at 509-11).

In order to qualify for the protection of the attorney work product privilege, a document must have been created by or at the direction of an attorney in anticipation of litigation. The

litigation which is anticipated need not imminent, as long as the motivating factor behind the creation of the document was to aid in possible future litigation. U.S. v. Davis, 636 F. 2d 1028, 1040 (5th Cir. 1981); A. Michael's Piano, 18 F3d. At 146; Hickman, 329 U.S. at 511.

The protection of Exemption 5 as to the attorney work-product privilege, as well as the other privileges, are not limited to civil litigation. Rather courts have either explicitly or implicitly recognized that the work-product doctrine is applicable to criminal prosecutions when the courts have upheld the nondisclosure of documents prepared in the context of a criminal investigation/prosecution pursuant to the (b)(5) Exemption. See Antonelli v. Sullivan, 732 F2d 560, 561 (7th Cir. 1983); Ferri v. U.S. Dept. of Justice, 573 F. Supp. 852, n. 33 (W.D.Pa. 1983); Harvey v. U.S. Dept. of Justice, 747 F. Supp. 29,37 (D.D.C. 1990); Dunham v. U.S. Dept. of Justice, 829 F.Supp. 428, 433 (D.D.C. 1993); Jimenez v. FBI, 938 F.Supp. 21, 28, (D.D.C. 1996). The courts have held that "if material is exempt from FOIA disclosure because of the attorney work product privilege, the exemption does not terminate at the close of the litigation for which the material was prepared." Grove v. Dept. of Justice, et,al., 802 F. Supp. 506,514 (D.D.C. 1992).

This exemption (b) (5) was applied to Documents 2, 4, 5 and10. See Vaughn index attached as Exhibit G to the Kornmeier Declaration. The records to which the attorney work-product privilege is applied reflect such matters as trial preparation, trial strategy, interpretations, and personal evaluations and opinions pertinent to Mr. Lipsey's criminal case. The records were prepared by an attorney or at an attorney's request or direction, and made in anticipation of or during litigation. The substance of the records are such as to be exempt from disclosure pursuant to this privilege. Kornmeier Decl. ¶ 15.

14

**Exemption (b)(7)(C)**

Exemption 7(C) of the FOIA exempts from mandatory disclosure information compiled for law enforcement purposes when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). "[T]he term 'law enforcement purpose' is not limited to criminal investigations but can also include civil investigations and proceedings in its scope." Mittleman v. Office of Personnel Management, 76 F.3d 1240, 1243 (D.C. Cir. 1996), cert. denied, 519 U.S. 1123 (1997), citing Pratt v. Webster, 673 F.2d 408, 420 n.32 (D.C. Cir. 1982). When, however, a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies." Keys v. U.S. Dept. of Justice, 830 F.2d 337, 340 (D.C. Cir. 1987), citing Pratt, 673 F.2d at 418. A criminal law enforcement agency must simply show that "the nexus between the agency's activity . . . and its law enforcement duties" is "'based on information sufficient to support at least 'a colorable claim' of its rationality.'" Keys, 830 F.2d at 340, quoting Pratt, 673 F.2d at 421.

Once the agency has demonstrated that the records were compiled for law enforcement purposes, the Court must next consider whether the release of information withheld "could reasonably be expected to constitute an unwarranted invasion of personal privacy." This determination necessitates a balancing of the individual's right to privacy against the public's right of access to information in government files. See, e.g., U.S. Dept. of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 776-780 (1989).

The Supreme Court has made clear that "whether disclosure of a private document under Exemption 7(C) is warranted must turn on the nature of the requested document and its

15

relationship to 'the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny,' Department of Air Force v. Rose, [425 U.S. 352, 372 (1976)], rather than on the particular purpose for which the document is being requested." Reporter's Committee, 489 U.S. at 772 (internal quotation marks omitted).  Information that does not directly reveal the operations or activities of the government "falls outside the ambit of the public interest that the FOIA was enacted to serve." Id. at 775.  That public interest is to "shed[] light on an agency's performance of its statutory duties." Id. at 772.  The plaintiff bears the burden of establishing that the "public interest in disclosure is both significant and compelling in order to overcome legitimate privacy interests." Perrone v. FBI, 908 F. SUPP. 24, 26 (D.D.C. 1995), citing Senate of Puerto Rico v. Department of Justice, 823 F.2d 574, 588 (D.C. Cir. 1987).

Significantly, it is the "interest of the general public and not that of the private litigant" that matters.  Brown v. FBI, 658 F.2d 71, 75 (2d Cir.1981).  "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'"  Davis v. Department of Justice, 968 F.2d 1276, 1282 (D.C. Cir.1992) (quoting Reporters Committee, 489 U.S. at 773) (internal quotation marks omitted). The privacy interests of third parties mentioned in law enforcement files are "substantial," while "[t]he public interest in disclosure [of third-party identities] is not just less substantial, it is insubstantial." SafeCard Services, Inc. v. SEC, 926 F.2d 1197, 1205 (D.C. Cir.1991).  Our court of appeals has held "categorically" that "unless access to names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such

information is exempt from disclosure." SafeCard Services, 926 F.2d at 1206.

Exemption 7(C) consistently has been held to protect the identities of suspects and other persons of investigatory interest who are identified in agency records in connection with law enforcement investigations. Reporters Committee, 489 U.S. at 780; Computer Professionals for Social Responsibility v. U.S. Secret Service, 72 F.3d 897, 904 (D.C. Cir. 1996) (noting "'strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity'" (quoting Dunkelberger v. Dept. of Justice, 906 F.2d 779, 781 (D.C. Cir. 1990)). Indeed, an agency may categorically assert Exemption 7(C) to protect the identities of witnesses or other persons mentioned in law enforcement files in such a way as to associate them with criminal activity. Reporters Committee, 489 U.S. at 780; Nation Magazine v. U.S. Customs Service, 71 F.3d 885, 893, 895-896 (D.C. Cir. 1995); SafeCard Services, 926 F.2d at 1206.

Likewise, the names of law enforcement officers who work on criminal investigations have traditionally been protected against release by Exemption 7(C). Davis, 968 F.2d at 1281; Lesar v. U.S. Department of Justice, 636 F.2d 472, 487-488 (D.C. Cir. 1980). Similarly, individuals who provide information to law enforcement authorities, like the law enforcement personnel themselves, have protectable privacy interests in their anonymity. Computer Professionals for Social Responsibility, 72 F.3d at 904; Farese v. U.S. Department of Justice, 683 F. Supp. 273, 275 (D.D.C. 1987). See also Odle v. Dep't of Justice, 2006 WL 1344813 (N.D. Cal. May 17, 2006) (agency's Vaughn index demonstrated that the exemption protects information that would identify third parties and low-level government employees; because there was no showing of government misconduct, there is little or no public interest to outweigh the

17

individual's privacy interests; because plaintiff seeks access to a single investigative file

concerning readily identifiable persons, the documents must be withheld, in whole or in part, in

order to protect the privacy interests of the persons involved.)

Furthermore, a prisoner's personal interest in information to challenge his conviction

does not raise a FOIA-recognized interest that should be weighed against the subject's privacy

interest. See Thomas v. Office of the United States Attorney, 928 F.Supp. 245, 251 (E.D.N.Y.

1996.)  The Supreme Court in National Archives and Records Admin. v. Favish, 124 S.Ct. 1570,

1579 (2004), clearly defined the standard to be applied when the courts conduct the balancing

test under Exemption 7(C).

> Where there is a privacy interest protected by Exemption 7(C) and
> the public interest being asserted is to show that responsible
> officials acted negligently or otherwise improperly in the
> performance of their duties, the requester must establish more than
> a bare suspicion in order to obtain disclosure.  Rather, the
> requester must produce evidence that would warrant a belief by a
> reasonable person that the alleged Government impropriety might
> have occurred.

Favish, 124 S.Ct. at 1581.

Exemption (7)(C) was applied to documents 1, 3, 4, 6, 7, 8, 9, 11, 12, 14, 15, 16, 17, 18

and19.  See Vaughn index attached as Exhibit G to the Kornmeier Declaration.  This exemption

excludes from mandatory release records or information compiled for law enforcement purposes

if such release could reasonably be expected to constitute an unwarranted invasion of personal

privacy.  All information at issue in this case was compiled for law enforcement purposes in

order to prosecute Mr. Lipsey for violations of criminal statutes.  Kornmeier Decl. ¶ 16.

Exemption (7)(C) was applied to withhold the identities of and personal information about third

party individuals, the release of which could subject such persons to an unwarranted invasion of

18

their personal privacy.  Id., at 17.  Release of the identifying information could result in unwanted and even unlawful efforts to gain further access to such persons or to personal information about them, or cause them harassment, harm, or exposure to unwanted and/or derogatory publicity and inferences arising from their connection to the case, all to their detriment.  Id.  The identities of individuals such as special federal agents, government employees, and local law enforcement personnel who participated in the investigation and prosecution of this case were also withheld.  Id., at 18.  Individual duties and assignments are not public and such publicity as would likely arise from disclosure would seriously impede, if not totally jeopardize, law enforcement effectiveness in subsequent cases, even subjecting such individuals to harassment or harm.  These persons have protected privacy interests in the conduct of law enforcement investigations.  Id.

The EOUSA determined that there was no public interest in the release of this information because dissemination of the information would not help explain the activities and operations of the EOUSA.  No public interest would counterbalance an individual's privacy right in the information withheld under this exemption.  Indeed, Mr. Lipsey provided no authorizations or consents to release otherwise personal privacy protected materials from any third party individual.  Id., at 19.

**E.     Segregability**

The FOIA requires that if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions." 5 U.S.C. § 552(b); Billington v. Dep't. of Justice, 233 F.3d 581, 586 (D.C. Cir. 2000); Krikorian

v. Dep't. of State, 984 F.2d 461, 466 (D.C. Cir. 1993); Mead Data Cent., Inc. v. United States

Dep't. of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977). The agency must provide a

"detailed justification" to demonstrate that all reasonably segregable information has been

released, Mead Data, 566 F.2d at 261, and show "with reasonable specificity" why a document

cannot be further segregated. Armstrong v. Executive Office of the President, 97 F.3d 575,

578-79 (D.C. Cir. 1996).

Here, EOUSA has met its segregability obligation. The Vaughn index attached as

Exhibit G to the Kornmeier declaration describes with particularity each document and all

meaningful information contained therein. Each document, and the pages contained in each

document, was evaluated for segregability initially, and again during the preparation of the

index. Kornmeier Decl. ¶ 22. Where a document was withheld in its entirety, EOUSA

determined that no meaningful portions could reasonably be released without destroying the

integrity of such document as a whole.[6] Id.

## III.  CONCLUSION

The uncontroverted evidence demonstrates that EOUSA conducted an adequate search

and properly withheld documents exempt under the FOIA. Accordingly, EOUSA respectfully

requests that this Court grant its Motion for Summary Judgment, and enter final judgment on

---

[6] Documents no. 1, 2, 4, 5, 6, 9 and 10 were withheld in full. See Declaration of John Kornmeier, Exhibit G.

behalf of the Defendant.

Respectfully submitted,

/s/

_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/

_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

/s/

_____
HEATHER D. GRAHAM-OLIVER
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C.  20530
(202) 305-1334

21

**<u>CERTIFICATE OF SERVICE</u>**

I certify that the foregoing Motion for Summary Judgment was served upon Plaintiff by

depositing a copy of it in the U.S. Mail, first class postage prepaid, addressed to:

DERRICK LIPSEY
R 9909-12
FEDERAL MEDICAL CENTER
CARD UNIT
P.O. Box 14500
Lexington, KY 40512

on this 29th day of September, 2006.

_____
Heather Graham-Oliver

22